UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                    Chapter 11

1325 Atlantic Realty LLC,                                    Case No. 22-40277 (NHL)

                                                  Debtor.
-----------------------------------------------------------------x
Brooklyn Hospitality Group LLC,                           Adv. Pro. No.

                                                  Plaintiff,

     -against-

1325 Atlantic Realty LLC,

                                                 Defendant.
-----------------------------------------------------------------x

### ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT RECHARACTERIZING BHG'S LEASE WITH THE DEBTOR AS A DISGUISED FINANCING TRANSACTION

The plaintiff herein, Brooklyn Hospitality Group LLC ("Plaintiff" or "BHG"), by its counsel, Goldberg Weprin Finkel Goldstein LLP, as and for its Adversary Complaint against the debtor and defendant, 1325 Atlantic Realty LLC (the "Debtor"), respectfully alleges as follows:

### Preliminary Statement

1.     This Adversary Proceeding seeks resolution of a significant controversy between the parties regarding the proper characterization of BHG's First Amendment of Lease dated as April 1, 2019 and related documents (the "Purported Amended Lease"). While the Purported Amended Lease facially creates a landlord-tenant relationship, the economic substance of the transaction is that the Purported Amended Lease was intended as a means to finance BHG's hotel development and should be properly viewed as a disguised financing transaction for purposes of this Chapter 11 case. The Debtor disputes and disagrees with this contention,

necessitating the need for Declaratory Judgment to run in tandem with the pending claims objections filed by the Debtor and BHG's opposition thereto.

2. While the issues regarding lease recharacterization have been raised as part of the claims objection, BHG is filing this Adversary Proceeding so that the Bankruptcy Court has the proper procedural framework to rule on the issues. As pleaded below, all of the relevant factors militate in favor of recharacterizing the Purported Amended Lease as a disguised financing transaction. Indeed, the Debtor's contention that the parties entered into a true lease for the property located at 1325-1339 Atlantic Avenue, Brooklyn, NY (the "Property") should be rejected.

## Jurisdiction

3. While the District Court has not yet ruled upon BHG's motion to remand certain overlapping state court litigation which has been removed by the Debtor, and BHG filed a contingent proof of claim without prejudice to its jurisdictional defenses, given the passage of time, this Adversary Proceeding potentially presents a "core proceeding" under 28 U.S.C. §157(b)(2)(A) and (B) in that this matter (i) concerns the administration of the Debtor's Chapter 11 case; and (ii) involves the disposition, treatment, allowance or disallowance of claims against the Debtor's estate.

## The Parties

4. The Debtor is a New York limited liability company with offices at 404 Arlington Avenue, Livingston, NJ 08701.

5. BHG is a New York limited liability company with a mailing address c/o Seligson Rothman & Rothman Esqs., 29 West 30th Street, 10th Floor, New York, NY 10001.

**Background Facts**

6. At the time of the Debtor's acquisition, the Property was already subject to the tenancy of the Plaintiff, under a lease dated August 4, 2017 (the "Original Lease") with the prior owner, 1325 Atlantic LLC (the "First Owner"), taken by Plaintiff with the intention of redeveloping the Property as a 150-room hotel in the Crown Heights section of Brooklyn.

7. On or about August 4, 2017, BHG and the First Owner entered into a series of agreements comprising the Original Lease, including a purchase option agreement and a side letter, which were designed to provide BHG with the opportunity to acquire and develop a hotel at the Property.

8. Under the terms of the Original Lease rent was fixed at $500,000 annually for the first three years, with an increase to $1,000,000 in the fourth year, by which time it was anticipated the hotel construction would be completed. Monthly increases are provided every five years thereafter.

9. As contemplated under the Original Lease, the Property is currently being developed by BHG as a 151-room hotel. Lazar Waldman is the lead principal of BHG, and his affiliated company, W Developers Corp., is the general contractor and developer of the project.

10. In January 2019, Eli Liberman, one of the principals of the Debtor, contacted Waldman and inquired about purchasing real property located at 73 Starr Street, Brooklyn, NY or 987 Willoughby Avenue, Brooklyn, NY (collectively, the "Waldman Properties") to complete a then-expiring 1031 tax exchange. Typically, 1031 like-kind exchanges and tax deferral rules for capital gains (federal and state) are subject to rigid timeframes. After the Waldman Properties did not prove to be viable 1031 options, the parties then focused on utilizing BHG'

hotel development Project as a means to implement a 1031 tax exchange for the benefit of the Debtor and its principals.

11. To this end, Waldman facilitated a sale of the Property between the First Owner and the Debtor, predicated upon BHG's agreement to sign the Purported Amended Lease.

12. As a critical component of the acquisition, BHG agreed to amend its existing lease with the First Owner to redefine the substance of its economic obligations.

13. The Purported Amended Lease contains many earmarks of a financing device to provide BHG with the opportunity to acquire the Property for the same purchase price (plus broker's commissions) as paid by the Debtor.

14. By virtue of the purchase option corresponding to the Debtor's original purchase price and not market sales, BHG functionally obtained a purchase money mortgage for the Property through the vehicle of the Purported Amended Lease.

15. Esther Green-Blumenfeld, another principal of the Debtor, confirmed so much in an email to her attorney, Jeffrey Zwick, on March 27, 2019 (copied to Waldman), indicating that a deal had been reached to purchase the Property from the First Owner, and to amend the Original Lease to provide that purported "rent" would correspond to payment of an interest factor of 10.5% per annum, with increases after five years plus "compounding" every five years thereafter.

16. In this email, Esther Green-Blumenfeld confirmed that after the first year, and continuing for ten years, BHG would be able to purchase the Property from the Debtor for the amount of $11,615,000, equal to the original purchase price of $10,817,625, plus broker commissions. These core financial terms became the impetus for the Purported Amended Lease.

17. Within a year or so after issuance of the Purported Amended Lease, BHG obtained a $6.4 million construction loan from Sands Capital LLC ("Sands") on January 27, 2020, secured by a leasehold mortgage, which the Debtor expressly approved.

18. The leasehold mortgage with Sands was extended for another year on January 27, 2021, again with the Debtor's consent.

19. By early 2021, the project was approximately 70% completed based upon total investment of $11,088,695.60, including funds loaned by Sands.[1]

### The Prior Litigation

20. By February 2021, the pandemic unfortunately took its toll on the Project, which came to a halt. BHG fell into arrears on its payments to the Debtor and Sands, leading to the commencement of litigation in the state court, which was pending as of the commencement of the Chapter 11 case.

21. On September 23, 2021, the Debtor commenced an action in the Supreme Court, Kings County, seeking alleged unpaid rent and future rent, as well as possession of the Property following a purported termination under Index No. 524178/2021 (the "State Court Litigation").

22. Of note, the Debtor did not commence a Landlord/Tenant proceeding, although it was effectively arguing that BHG was an alleged holdover tenant.

23. BHG answered and counterclaimed on November 29, 2021, invoking principles of equitable mortgage, contending that the Notice of Termination was ineffective, and the Purported Amended Lease is a disguised financing transaction based upon the equitable mortgage theory.

---

[1] The Claims filed by BHG and Waldman in the Debtor's bankruptcy case (which overlap to cover both the individual principal and the developer) are predicated upon the total funds invested and expended on the project.

24. Sands also counterclaimed, asserting separate rights under its leasehold mortgage. Although first electing to proceed in the state court, the Debtor subsequently filed a Chapter 11 petition on February 16, 2022, and sought removal of the State Court Litigation by filing a notice in the District Court on February 27, 2022.

25. At the invitation of the District Court, BHG and Sands opposed removal and sought remand as noted above. The parties fully briefed the matter and are awaiting a decision.

26. In the meanwhile, this Court fixed a Bar Date for the filing of claims in the bankruptcy case.

27. In turn, BHG and Waldman were required to preserve their economic rights and entitlements by filing a series of contingent proofs of claim relating to reimbursement for all construction costs and expenses to develop the Property, which will be potentially forfeited if recharacterization fails and the Purported Amended Lease is terminated.

28. Conversely, if the Purported Amended Lease is recharacterized, BHG retains all of its rights as a borrower including the right of redemption.

**As and For a First Cause of Action**
**(Declaratory Judgment)**

29. Plaintiff repeats and realleges all of the statements contained in the foregoing paragraphs as if repeated in full.

30. Although BHG has expended more than $11 million on redevelopment and construction costs, the Debtor has seized upon the nominal terms of the Purported Amended Lease in an attempt to extinguish the interests of BHG and BHG's own creditors, including its secured lender, Sands.

31.     Accordingly, the proper characterization of the Purported Amended Lease as either a true lease or disguised financing transaction remains the central issue in this Chapter 11 case.

32.     Recharacterization is a well-known doctrine in bankruptcy, recognized by the Legislative history to 11 U.S.C. §365, explaining that "the distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a lease".  (*See,* S.Rep. No. 989, 95th Cong., 2d Sess. 64 (1976)).

33.     Among the factors to be considered in determining the true economic substance of a transaction are:

- (i) whether the "rental" payments were calculated to compensate the lessor for the use of the land, or rather were structured for some other purpose, such as to ensure a particular return on an investment;

- (ii) whether the purchase price was related to the fair market value of the land, or whether it was calculated as the amount necessary to finance the transaction;

- (iii) whether the property was purchased by the lessor specifically for the lessee's use;

- (iv) whether the transaction was structured as a lease to secure certain tax advantages; and

- (v) whether the lessee assumed many of the obligations normally associated with outright ownership, including the responsibility for paying property taxes and insurance.

34.     These factors militate in favor of recharacterization.  First, unlike the rent under the Original Lease, which was more closely tied to the value of the Property, under the Purported Amended Lease the parties literally "backed into" the so-called fixed rent.  The fixed rent is not reflective of market conditions at all, but was calculated based upon a 10.5% interest rate measured against the original purchase price of $10,817,625, plus commissions. Once viewed in this light, the purported fixed rent is manifestly the functional equivalent of disguised interest.

35. Second, as with most disguised financing transactions, the Purported Amended Lease contains an important purchase option which is likewise not based on anticipated market conditions. Instead, the parties pegged the option purchase price to the original purchase price previously paid by the Debtor (dollar for dollar), making the exercise of the option a vehicle to reimburse the Debtor for the purchase price (dollar for dollar) irrespective of any appreciation of the Property following completion of the Project.

36. Third, the Debtor purchased the Property directly and exclusively for BHG's use.

37. Fourth, because the Property was purchased by the Debtor as part of a 1031 tax exchange (subject to the amendments to the Original Lease), the framework for the Purported Amended Lease was plainly tax driven.

38. Fifth, there are a number of indicators that ownership rights were transferred to the Plaintiff, as lessee. Within a year or so after issuance of the Purported Amended Lease, BHG obtained a $6.4 million construction loan from Sands on January 27, 2020, secured by a leasehold mortgage, which the Debtor expressly approved.

39. It is hardly the norm for a true landlord to agree that a tenant can encumber its property with a multi-million dollar leasehold mortgage, but again, this was done with the view that BHG would own the Property and the Debtor was an intermediary in the process.

40. Further, BHG assumed many of the obligations normally associated with outright ownership, including the responsibility for paying 100% property taxes and insurance, the funding of the Debtor's acquisition through the purchase option, the obligation of BHG to pay all operating costs, and the fact that BHG can own the Property through the Purchase Option at the same price paid by the Debtor.

41.  Additionally, the term of the Purported Amended Lease, at 49 years, is unusually long and indicative of ownership rather than a landlord/tenant relationship, particularly since the right to claim depreciation resides with BHG, pursuant to Section 13.05 of the Original Lease, which was carried over under the Purported Amended Lease without change.

42.  In view of the Debtor's rejection of BHG's contention that the Purported Amended Lease is a disguised financing vehicle, there is a justiciable dispute and controversy between the parties concerning recharacterization of the Purported Amended Lease for purposes of bankruptcy.

43.  In view of all of the foregoing, BHG is entitled to a Declaratory Judgment finding and establishing (i) that the Purported Amended Lease is not a true lease but a disguised financing transaction which is not subject to 11 U.S.C. §365; and (ii) that BHG retains all of its rights as a borrower including the right of redemption.

WHEREFORE, Plaintiff respectfully seeks entry of a judgment granting Declaratory Judgment on the first cause of action together with such other and further relief as the Court deems right and proper.

Dated: New York, NY
       November __, 2022

                Goldberg Weprin Finkel Goldstein LLP
                *Attorneys for Plaintiff,*
                *Brooklyn Hospitality Group LLC*
                1501 Broadway, 22nd Floor
                New York, NY 10036
                212-301-6944

                By:    /s/ Kevin J. Nash